UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LEOPOLD GUSTINGS AND ON BEHALF OF JENNIFER S. GUSTINGS | CIVIL ACTION NO. 07-4443 |
| | SECTION: "N" |
| VERSUS | |
| | JUDGE KURT D. ENGELHARDT |
| THE TRAVELERS AND STANDARD FIRE INSURANCE COMPANY | MAGISTRATE: "1" JUDGE SALLY SHUSHAN |

## ORDER

Before the Court are two motions: a Motion for Partial Summary Judgment as to Contents Coverage, Additional Living Expenses, and Bad Faith Claims and Motion in Limine to Strike the Testimony of Plaintiff's Public Adjustor (Rec. Doc. 29) and a Motion in Limine to Exclude Expert Report (Rec. Doc. 22), both from Defendant Travelers & Standard Fire Insurance Company ("Standard"). After reviewing the pleadings, the memoranda filed by the parties, and the applicable law, **IT IS ORDERED** that the Motion for Partial Summary Judgment/Motion in Limine is hereby is hereby **GRANTED IN PART** and **DENIED IN PART**, and the Motion in Limine is **DENIED**.

### I. BACKGROUND

Leopold Gustings and his wife Jennifer–since deceased–owned a two-story home on Benjamin Street in New Orleans at the time Hurricane Katrina made landfall on August 29, 2005. Gusting's homeowner's policy, purchased from Standard, included coverages for the structure and other structures on the property, as well as contents and additional living expenses. Gustings' home was damaged by Katrina–including damage to fences and a den at the rear of his home–but the house did not flood. Gustings contacted Standard to make a claim under his policy, and on November 2, 2005, Standard sent an adjustor to investigate. Gustings received payments of $10,000 in additional living expenses ("ALE") to cover the nine weeks from the date of loss to the date the property was inspected. *See* Opp. at Ex. 2. He also received $25,000 in payments for damage to the home. *See* Mot. at Ex. 1 (Gustings deposition).

Gustings claims that he complained to Standard that the payments for the structural and other damage and the payments for ALE were insufficient. *See* Opp. at 4. Regarding the ALE coverage, he says that he was told to forward receipts and other documentation to the company. He claims he did so twice and that both times the documentation was lost. *See* Opp. at Ex. 1-B (Gustings deposition, pp. 112-16). Allegedly because of this experience, he did not send Standard a checklist of lost contents for payment under his contents coverage. *Id.* (p. 119) He also claims that when he complained about the amount recovered for the property damage, he was told to obtain contractors' estimates of the cost of repairing his home, and was told by a Standard representative to "keep trying" when he reported that he was unable to get a contractor to inspect his home and give him an estimate. *See* Opp. at Ex. 4 (Gustings affidavit).

Gustings filed the instant lawsuit on August 27, 2007. He states claims for breach of contract as to deficiencies in payments for his property damage, contents damage, ALE, and also statutory

2

penalties and fees for bad faith claims adjusting under LA. REV. STAT. 22:658 and 22:1220.

## II. ANALYSIS

### A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and

draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence ." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. Motion for Partial Summary Judgment as to Coverage and Bad Faith**

### i. Contents Coverage

A contract for insurance constitutes the law between the two contracting parties. *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988) (citing *Carney v. Am. Fire & Indem. Co.*, 371 So. 2d 815 (La. 1979)). Courts have no authority to interpret or alter the terms of any contract, including an insurance policy when the policy provisions within are unambiguous. *Id.* (citing *Monteleone v. Am. Emp. Ins. Co.*, 120 So. 2d 70 (La. 1960)). In this case, Gustings' policy required him to submit to Standard "within 60 days after the loss, a sworn statement of loss" as a condition precedent to filing suit. *See* Mot. at Ex. 3 (Policy §II(1)(d), p. 16); *see also id.* at (6) ("Suit Against Us"). It is undisputed that Gustings did not submit any such proof of loss. *See* Opp. at Ex. 1-B (Gustings Deposition, p. 118) (Rec. Doc. 36). His assumption that such a submission would be unavailing does not absolve him from the duty to do so prior to filing suit. Thus, Defendant's motion is **GRANTED** as to Plaintiff's claims for contents coverage and the claim is **DISMISSED WITH PREJUDICE**.

### ii. ALE Coverage

Plaintiff also brings a claim for additional ALE payments, over and above the $10,000 already received under his policy. Standard argues that the claim fails for failure to file a proof of loss. Gustings, however, claims that he twice sent receipts for ALE to Standard, and that both times Standard failed to acknowledge receipt or pay his claim. *See id.* (Gustings deposition, pp. 113-16). He also points to a Standard claims diary that indicates that Gustings contacted Standard on March 15, 2006, claiming that he had "faxed" receipts in January and was told to fax them again. *See* Opp. at Ex. 1-A. However, on November 10, 2008, Standard filed a supplemental memorandum attaching the actual ALE receipts, which it had received that day. The receipts total approximately $7,500. *See*

3d Supp. Memo at Exs. B1-B9. Even if every expense documented by the receipts is properly classified as an additional living expense,[1] in total they do not exceed the amount Gustings has already received under his ALE coverage. This constitutes the sum total of evidence that Gustings is able to point to in support of his claims for ALE. No reasonable factfinder could find that Gustings is entitled to recover more in additional living expenses than he is able to document, and thus Defendant's motion is **GRANTED** as to Plaintiff's claims for additional living expenses and the claim is **DISMISSED WITH PREJUDICE**.

### iii. Bad Faith Claims Adjusting

Plaintiff states claims under LA. REV. STAT. 22:658 and 22:1220 for bad faith claims adjusting, asserting three grounds for the claim. The first two grounds relate to failure to timely adjust and pay his claims for contents coverage and ALE. *See* Opp. at 3-4. Gustings also claims that Standard was in bad faith when it failed to send an adjustor to inspect Gustings' house for a second time, after he complained that his payment for property damage was inadequate. *See id.* at 3 ("When plaintiff told Standard that he hadn't received sufficient money for repairs, instead of sending another adjuster to reinspect, Standard told him to get estimates from contractors and send them in. . . . It was Standard's duty to send out an adjuster in this situation when it was impossible to find a contractor in post-Katrina New Orleans.").

Sections 22:658 and 22:1220 do not penalize insurance companies for failing to pay claims, but for failing to pay claims in a manner that is "arbitrary, capricious, or without probable cause." LA. REV. STAT. 22:658(B)(1); LA. REV. STAT. 22:1220(B)(5). Under both penalty statutes, Plaintiffs

---

[1] As Defendant notes, it is arguable that expenses such as $40 for a table lamp and $190 for a camera are not recoverable as additional living expenses. *See* 3d Supp. Mem. (Rec. Doc. 40).

6

bear the burden of proving (1) that Defendant received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period; and (3) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause. *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So.2d 746, 752 (La. App.1999). "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is *clear* that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003) (emphasis added); *see also Holt v. Aetna Cas. & Sur. Co.*, 680 So. 2d 117, 130 (La. App.1996) ("In bad faith actions, the insured is seeking extra-contractual damages, as well as punitive damages. Therefore, the insured's burden is great."). The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. *Reed*, 857 So.2d at 1020-21.

In this particular case, the Court finds that Gustings cannot prove that Standard acted in an arbitrary manner by refusing to send a second adjustor to inspect his home. Contrary to Gustings' contention, there is no duty to *re*-inspect a property after a homeowner complains that his payment was inadequate, only a duty to timely adjust the claims–which Standard clearly did. It paid Plaintiff $25,000 for property damage in December 2005. While there is a legitimate difference of opinion as to whether that amount is inadequate, no evidence has been presented that would allow a reasonable factfinder to conclude that Standard acted in bad faith.

Further, statutory penalties and fees for bad faith claims handling are unavailable in cases where there is no underlying cause of action for failure to pay a legitimate claim. *See Clausen v. Fidelity and Deposit Co.*, 660 So.2d 83 (La. App.1995), *writ denied*, 666 So.2d 320 (La. 1986). Therefore, since the claims for contents coverage and ALE have been dismissed, *see supra*, the bad

faith claims relating to those underlying claims also fail.

Accordingly, Defendant's motion as to Plaintiff's claims for statutory penalties and fees under LA. REV. STAT. 22:658 and 22:1220 is **GRANTED** and the claims are **DISMISSED WITH PREJUDICE**.

### C. Testimony and Report of Steve Hitchcock

Standard moves in limine to strike Steve Hitchcock's testimony on grounds that it cannot be verified as reliable under FED. R. EVID. 702 and also moves to strike his expert report and supplemental expert report for failure to comply with FED. R. CIV. P. 26 and with this Court's scheduling order.

<u>i. Motion to Exclude Expert Report and Supplemental Report under Rule 26</u>

Hitchcock may offer testimony regarding the information reflected in his May 2008 report and the bases for the determinations set forth therein, though the report itself cannot be introduced as inadmissible hearsay. Although all of the requirements of Rule 26(a)(2)(B) initially were not satisfied in this instance, other facts weigh against excluding the testimony. Specifically, Standard has had access to the report for several months, and has deposed Hitchcock. Thus, Standard has had the opportunity to inquire into any of the subject areas addressed by Rule 26(a)(2)(B). Also, Standard has listed representatives of Worley Claims as potential witnesses who will testify as to the adjustment of Gustings' claim. Finally, Standard may vigorously cross-examine Hitchcock regarding his credentials, his first and second inspections of the property, the information set forth in his report, and the bases for the determinations set forth therein.

However, Hitchcock's July 24, 2008 supplemental report, attached as an exhibit to Standard's motion, will not be admitted into evidence because it is untimely, and Hitchcock will not

be allowed to testify as to its contents. Hitchcock may offer testimony regarding *his* determinations relative to the property, but he will not be allowed to offer an opinion as to whether *Standard's* adjustment of Plaintiff's claim complied with industry standards. On the other hand, he may verbally offer his explanation of the differences between his estimates and those prepared by Standard and its representatives. Thus, to the extent stated herein, Defendant's Motion in Limine To Exclude Expert Testimony (Rec. Doc. 22) is **DENIED IN PART** and **GRANTED IN PART**.

### iii. Motion to Strike Expert's Testimony as Unreliable

Standard argues that Hitchcock's testimony must be excluded because he is unqualified and also because he bases his opinions on an unreliable methodology and erroneous or nonexistent facts, such that his testimony is precluded pursuant to the holdings in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 (1999).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of*

*Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed.Appx. 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.' " (citing *Kumho Tire*, 526 U.S. at 152)). With respect to the determination of relevancy pursuant to Rule 702 and Daubert, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

Hitchcock's testimony, as narrowed by this Order, centers on what he observed in his two inspections of Gustings' property. It is undisputed that he has worked as an adjustor since 2005 and has experience since the 1980s as a contractor and contract estimator. *See* Opp. at Ex. 5 (Hitchcock CV).[2] He has experience with the Xactimate estimating system, widely used in the industry. *Id.* The

---

[2] Standard points to a order issued by the Insurance Commissioner of the state of Louisiana in December 2007, ordering Hitchcock to cease and desist from working as a "public adjustor" in the state. *See* 3d Supp. Memo. at Ex. A (Rec. Doc. 44). Gustings argues that

10

Court finds that Plaintiff has made a threshold showing of reliability, and that his testimony will be helpful to the trier of fact. Standard can vigorously cross-examine Hitchcock about his credentials, his report and the basis for the observations in it, and any discrepancies between the report and other evidence in the case. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Thus, the Motion to Strike the Expert's Testimony as Unreliable (Rec. Doc 29) is **DENIED**.

New Orleans, Louisiana, this 18th day of November, 2008.

                              **KURT D. ENGELHARDT**
                              **UNITED STATES DISTRICT JUDGE**

---

Hitchcock's testimony is sought not as a "public adjustor," but as a private expert witness. *See* Opp. at 2-3. Additionally, in his deposition Hitchcock testified that any complaints against him were dismissed. *Id.* at Ex. 1 (Rec. Doc. 45) (Hitchcock Deposition, pp. 25-27). This is precisely the kind of credibility issue about which the factfinder will be aided by vigorous cross-examination, not exclusion of testimony.